## ALFRED WILLIAMS AND COMPANY, INC. *vs.* FRANK WILTZ

Third Judicial District, Bridgeport, April Term, 1927.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Ordinarily the possessor of a negotiable instrument who sues thereon is deemed prima facie to be a holder in due course; but when it appears that the instrument came to him from one having a defective title, the burden of proving that he took it before maturity, in good faith, for value and without notice of the infirmity, is cast upon him by § 4417 of the General Statutes.

To this extent the statute reverses the general rule that it is for him who pleads facts to prove them.

To be a holder in due course, one need not pay the full face value for a negotiable instrument; but inadequacy of consideration has a bearing on the question of good faith and may, in connection with suspicious circumstances, justify a finding of bad faith.

The jury in the present case might reasonably have found that among a number of trade acceptances, having a face value of $4,000, which the plaintiff purchased from the O. Co. for $2,679, was one for $200 which had been fraudulently procured by the O. Co. from the defendant; and that, although the plaintiff knew, at the time of purchase, that the O. Co. was reported to be financially irresponsible and that the defendant's credit rating was high, it made no inquiry into the circumstances under which the instrument was executed, nor did it endeavor to learn why the O. Co. was willing to sell it at such a large discount. The jury returned a verdict for the defendant, which the trial court set aside. *Held* that the trial court erred, since the jury might reasonably have concluded that the plaintiff had not sustained the burden of proving that it was a holder in due course.

Argued April 11th—decided June 6th, 1927.

ACTION by the indorsee against the acceptor of a trade acceptance, brought to the City Court of New Haven and tried to the jury before *Robert L. Munger, Acting-Judge;* verdict for the defendant which the trial court set aside as against the evidence, and from this decision the defendant appealed. *Error; judgment to be rendered on verdict.*

*Robert J. Woodruff,* with whom was *Harry A. Cohen,* for the appellant (defendant).

*Nathan G. Sachs,* for the appellee (plaintiff).

BANKS, J. Plaintiff's cause of action is based upon a trade acceptance in the sum of $200, drawn by The Otis Oil Burner Corporation upon the defendant under date of September 1st, 1925, and accepted by him on that date, payable sixty days after date. It was transferred to the plaintiff by indorsement without recourse on September 12th, 1925. The answer alleges that the execution of the trade acceptance was procured by false and fraudulent representations made by The Otis Oil Burner Corporation in connection with a certain contract entered into between such corporation and the defendant, and that the plaintiff took the paper with knowledge of that fact. Upon the trial counsel for the plaintiff admitted that the instrument was procured by the fraudulent representations of The Otis Oil Burner Corporation, and the case was submitted to the jury upon the issue of whether the plaintiff was the holder of the instrument in due course. As relevant to that issue the jury could reasonably have found the following facts: The plaintiff was a so-called "finance company," incorporated about May 1st, 1925. The Otis Oil Burner Company was incorporated June 22d, 1925. In this transaction the plaintiff was represented by its president, Alexander Koenig. Koenig first met a representative of the Otis Company in August, 1925, who at that time offered to sell him certain trade acceptances including that of the defendant which was undated when signed by him, but bears the date of September 1st, 1925. Koenig purchased for the plaintiff from the Otis Company trade acceptances of the face value of about $30,000 during August and September,

1925, the first purchase being made August 19th, 1925, and the last on September 17th, 1925. The acceptance in suit was one of the fifth lot of acceptances purchased by the plaintiff from the Otis Company on September 12th, 1925, being acceptances of a face value of $4,000, for which plaintiff paid $2,679.26. The last lot of acceptances purchased on September 17th, 1925, was of a face value of $10,000, for which plaintiff paid $5,000. A few months later, plaintiff put the Otis Company into bankruptcy. Plaintiff at the time of the purchase of this acceptance had received a report from a mercantile agency upon the Otis Company to the effect that it maintained a small office which was locked upon the occasion of calls, that there was no stock of materials in evidence, and that investigation elicited no information as to amount of capital involved or extent of financial responsibility. Plaintiff had also received reports from a mercantile agency, a trade authority, and a bank as to the financial responsibility of the defendant, which were to the effect that he was doing a good business, carried a satisfactory bank balance, and was good for his credit requirements. So far as appeared, plaintiff made no inquiry as to the circumstances under which these trade acceptances were given to the Otis Company.

The plaintiff, as the holder, is deemed prima facie to be a holder in due course but, it being conceded that the instrument came to it from one having a defective title, the burden under the statute was upon the plaintiff to prove that it was a holder in due course. General Statutes, § 4417. This provision abrogates, so far forth, the general rule that it is for him who pleads facts to prove them. *Parsons* v. *Utica Cement Mfg. Co.*, 80 Conn. 58, 60, 66 Atl. 1024.

That plaintiff became the holder of this paper before maturity was not disputed, but it was contended by

defendant that the evidence disclosed facts and circumstances in connection with the purchase which justified a finding that the plaintiff was chargeable with notice of the infirmity in the instrument because of its knowledge of such facts, that its action in taking the instrument amounted to bad faith. General Statutes, § 4414. Chief among these was the admitted fact that this instrument, with others of like character, was bought by plaintiff at a substantial discount from face value.

The payment of the full face value of a bill or note is not necessary to make one a holder for value. Nor does the fact alone that it was bought at a discount charge the purchaser with notice of existing equities. The consideration paid for the note is, however, a fact to be considered upon the question of good faith, and inadequacy of the consideration may, in connection with suspicious circumstances, justify a finding of bad faith. 8 Corpus Juris 486, 508, 509.

In *Harris* v. *Johnson*, 89 Conn. 128, 93 Atl. 126, we had occasion to consider this question in a situation quite analogous to that here presented. In that case a $550-note was purchased by the plaintiff about two months before it became due, for $400. The plaintiff offered no proof that he had made any investigation as to the responsibility of the maker or any of the indorsers of the note, or as to why the amount paid was so much less than the face value. The trial court directed a verdict for the plaintiff. In reversing the judgment this court said (p. 134): "The amount paid by the holder of a promissory note purchased before maturity may, under some circumstances, become important in passing upon the question of good faith. The amount paid may be so disproportionate to the real value of the note said to have been purchased, that the claim to have paid any value for it would be con-

sidered as a mere subterfuge to conceal the true character of the transaction. In the present case, the deduction of so large a sum from the face of the note is a fact which should have been submitted to the jury in connection with all the evidence bearing upon the question of good faith." In that case emphasis was laid upon the failure of the plaintiff (upon whom rested the burden of proof) to offer evidence of any investigation as to the responsibility of the maker, or to explain why the amount paid was so much less than the face of the note. Here evidence was offered of an inquiry by the plaintiff as to the responsibility of the defendant, but that inquiry disclosed the fact that defendant was solvent and in good credit. Plaintiff's knowledge of the apparent solvency of the defendant strengthened the argument of implied notice and bad faith. 1 Daniel on Negotiable Instruments (6th Ed.) § 799. The situation called, even more insistently than in *Harris* v. *Johnson,* for an explanation as to why plaintiff was paying so much less than face value for a trade acceptance due in about six weeks from one whose credit for so small an amount as $200 was reported to be excellent. The paper in suit was one of twenty similar instruments executed by different parties, and the discount allowed by plaintiff was in gross upon the total amount of $4,000. The exact amount of the discount allowed by plaintiff upon this paper in suit did not appear, if indeed it was figured separately. But here again, bearing in mind the burden resting on plaintiff, the situation was one calling for explanation by the plaintiff and none was forthcoming. No evidence was produced by plaintiff as to the financial responsibility or otherwise of the parties to the other acceptances included in the total of $4,000, and inquiry upon cross-examination of the plaintiff's president elicited no information upon that point. As we said in *Harris* v.

*Johnson,* the testimony produced by the plaintiff upon this issue was noticeable rather for what was omitted than for what was introduced. Having in mind the burden which rested upon the plaintiff of proving that it acquired this instrument in due course, it is significant that plaintiff produced no evidence of any inquiry made with regard to the circumstances under which the maker gave it. In *Vosburgh* v. *Diefendorf,* 119 N. Y. 357, 23 N. E. 801, the court, at page 367, said: "The plaintiff did not meet the requirements of this rule [placing upon him the burden of proof], for he remained silent upon the subject of notice of the circumstances under which the maker gave the note. The most favorable view that could have been taken of the case for the plaintiff would still require the question of his good faith to be passed upon by the jury."

In the present case, the deduction of so large a sum from the face value of these trade acceptances, which so far as appeared were those of solvent makers, the failure of the plaintiff to prove that it made any inquiry as to the circumstances under which they were given, together with the inferences which the jury were entitled to draw from the testimony regarding the relationship between the plaintiff and the Otis Company, and the circumstances surrounding the purchase of this paper, were sufficient to justify the jury in finding that the plaintiff had failed to sustain the burden of proving that it was a holder in due course. The verdict was not so manifestly against the evidence as to warrant interference by the court.

There is error, the judgment is set aside and the cause remanded to the City Court of New Haven with direction to render judgment for the defendant on the verdict.

In this opinion the other judges concurred.