HARTFORD NATIONAL BANK & TRUST COMPANY *vs.*
LOUIS CREDENZA ET AL.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued December 4th, 1934—decided January 21st, 1935.

*William M. Harney,* with whom was *Norman Yellin,* for the appellant (defendant Credenza).

*Willis G. Parsons,* for the appellee (plaintiff).

BANKS, J. This is an action by the payee of a promissory note for $5000, dated February 3d, 1931, and payable four months after date, against the maker, Credenza, and an indorser before delivery, Champ. The trial court rendered judgment against both defendants, and the defendant Credenza alone appealed. The defense of the appellant is that his execution of the note, which he signed for the accommodation of the indorser, Champ, was procured by the misrepresentations of the latter and that the plaintiff did not take the paper in good faith and without notice of its infirmities, and was not therefore a holder in due course.

The following facts appear from the finding, which is not subject to any material corrections. On February 3d, 1931, the defendant Champ, who was then a depositor in the plaintiff bank, sought from it a loan of $5000, and was given a blank form of note upon which an officer of the bank wrote in the date, maturity date, name of the payee and the amount of the note. Champ's wife took this paper to Credenza, who was Champ's stepfather and an illiterate Italian sixty years of age and in ill health, told him that she and her husband wanted to get a little money from the bank, that the paper was a note which her husband had sent over for him to sign, and that an officer of the bank would also sign it. Credenza, who was unable to read or write, affixed his mark to the note relying upon these representations and Mrs. Champ signed her name as a witness to the mark. On March 9th, 1931, Champ, having indorsed the note, presented it at the bank which discounted it, crediting his account with the amount of the note less discount fees. Prior to the maturity date of the note Champ checked out the entire amount of the balance so credited to his account. At the time the note was discounted an

officer of the bank learned upon inquiry that one Louis Credenza owned real estate in Hartford, but was not personally familiar with the signature of Mrs. Champ or Credenza, and no officer of the bank made any attempt, prior to discounting the note, to verify such signatures other than through the defendant Champ. At the time the note was discounted the checking account of Champ at the bank was overdrawn in the sum of $1521.29. Credenza signed the note without asking to have it read to him on the erroneous assumption that it was a note for a few hundred dollars only. Sometime after signing the note he learned from Champ that the bank had loaned the latter $5000, and consulted an attorney who, on or about the date of the maturity of the note, informed an officer of the bank that Credenza claimed that he did not know that he had signed a note for so large an amount. The bank had no knowledge of this claim prior to that date. The note was not paid upon maturity, and notice was duly mailed to both defendants. It is not claimed that the plaintiff, as payee of the note, could not be a holder in due course, or that it is not a holder for value.

The court having found that the appellant was induced to sign the note by false representations, the plaintiff concedes that there was an infirmity in the instrument which cast upon it the burden of showing that it acquired title to it as a holder in due course. General Statutes, § 4376. To prove this it must show that when it took the note it had no notice of such infirmity. General Statutes, § 4369. To constitute such notice the plaintiff must have had actual knowledge of the infirmity, or knowledge of such facts that its action in taking the note amounted to bad faith. General Statutes, § 4373. It is not claimed that the plaintiff had actual knowledge of the infirmities in the

note, but appellant does contend that it was chargeable with knowledge of such facts that its action in discounting the note amounted to bad faith. The contention that the plaintiff was chargeable with such knowledge is based upon the proposition that the facts detailed in the finding imposed upon the plaintiff an active duty to make inquiry as to the circumstances of the execution of the note by the appellant, which inquiry, if made, would have disclosed the infirmity in the note.

The doctrine of notice as it affects the good faith of transactions generally does not apply to negotiable instruments. No duty rests upon the purchaser to make inquiry as to the purpose for which the paper was given, the responsibility of the maker or indorser, or the existence of possible defenses. Suspicious circumstances sufficient to put a prudent man on inquiry and negligent failure to make such inquiry will not necessarily bar a recovery by the holder. The test is not whether the plaintiff was negligent in acquiring the paper but whether he acted in good faith. It is not the failure to inquire but the dishonest purpose which establishes bad faith. *Mack* v. *Starr,* 78 Conn. 184, 186, 61 Atl. 472; *Rockville National Bank* v. *Citizens Gas Light Co.,* 72 Conn. 576, 45 Atl. 361; *Standard Cement Co.* v. *Windham National Bank,* 71 Conn. 668, 685, 42 Atl. 1006; *City National Bank of Auburn* v. *Mason,* 192 Iowa, 1048, 186 N. W. 30; *Moore* v. *Potomac Savings Bank,* 160 Va. 597, 607, 169 S. E. 922; Brannan's Negotiable Instruments Law (5th Ed.) p. 572; 2 Joyce, Defenses to Commercial Paper (2d Ed.) §§ 694, 695; 3 R. C. L. 1071-1075.

The facts known to the plaintiff at the time it discounted this note were not such as to impose upon it the duty to make inquiry as to the circumstances under which the appellant executed the note. That the note

was presented for discount a month after its date, by a depositor of the bank whose account was overdrawn, and that the officer of the bank was not familiar with the signature of Mrs. Champ as witness to the appellant's mark, would not justify, much less require, a conclusion that the act of the plaintiff in discounting the note without further inquiry amounted to bad faith. The most that the appellant could claim, in any event, would be that whether the action of the plaintiff in discounting the note amounted, under the circumstances, to bad faith was a question of fact for the trier. *Williams & Co., Inc.* v. *Wiltz,* 106 Conn. 147, 137 Atl. 759. The trial court has found that the plaintiff acted in good faith, and the subordinate facts fully support the finding.

There is no error.

In this opinion the other judges concurred.